UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York, | Case No.   **21-CV-1417** |
| Plaintiff, | |
| - against - | **NOTICE OF REMOVAL** |
| AMAZON.COM INC., AMAZON.COM SALES, INC., and AMAZON.COM SERVICES LLC, | |
| Defendants. | |

PLEASE TAKE NOTICE that Defendants Amazon.com, Inc., Amazon.com Sales, Inc., and Amazon.com Services LLC (collectively, "Amazon"), by and through their undersigned counsel, hereby removes the above-captioned action—with reservation of all defenses and rights—from the Supreme Court of the State of New York, County of New York (the "Removed Action"), to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1331, 1332, 1367, and 1441.  As grounds for removal, Amazon states as follows:

I.    **INTRODUCTION**

1.      In this action, the State of New York, represented by the Office of the New York Attorney General (the "OAG"), seeks to usurp federal regulation of workplace safety, convert non-binding agency guidance into legally binding requirements, and dictate the day-to-day operations and Human Resources policies of Amazon's JFK8 fulfillment center in Staten Island and DBK1 delivery station in Queens.  The standards that the OAG seeks to enforce, however, fall within the primary jurisdiction of federal regulators and are governed by federal law—and Amazon is in full compliance with those federal standards.

2.      Amazon is an essential business providing much-needed supplies and jobs in its communities.  Amazon has been intensely focused on COVID-19 safety, and has taken extraordinary, industry-leading measures grounded in science, above and beyond government guidance and requirements, to protect its associates from COVID-19, earning praise from health and safety officials and law enforcement officers.  In developing its response to the COVID-19 pandemic, Amazon has not only relied on its team of top health and safety professionals but also engaged with over 20 leading global medical and health experts, including pandemic response doctors, epidemiologists, and industrial hygienists, to identify and implement best practices.  Based on guidance from these experts, Amazon implemented over 150 process changes to promote social distancing, hygiene, and the safety of its associates, often well before New York State officials and federal officials recommended analogous measures.

3.      Amazon's efforts far exceed what is required under the law and recommended by public health guidance.  Indeed, following an unannounced inspection of JFK8 on March 30, the New York City Sheriff's Office—which was charged by the Mayor with enforcing COVID-19 safety requirements—stated that "[t]he facility appeared to go above and beyond the current compliance requirements," there were "absolutely no areas of concern," and complaints to the contrary are "completely baseless."  The data corroborates these independent law enforcement findings—the COVID-19 infection rate among Amazon and Whole Foods Market front-line employees in New York is *half* that of New York's general population.  And this likely materially *understates* the effectiveness of Amazon's health and safety measures because case rates do not distinguish between infections that occurred in the community versus those that were work-related.

4.      Amazon takes the health and safety of its employees extremely seriously, and it has taken appropriate steps to enforce its health and safety protocols for the protection of its entire

workforce.  This is exactly what Amazon did with respect to Christian Smalls and Derrick Palmer, two associates at Amazon's JFK8 facility who committed severe health and safety violations. Amazon terminated Mr. Smalls' employment and issued Mr. Palmer a warning because of their blatant disregard for Amazon's social distancing policies and Mr. Smalls' willful violation of an order to quarantine and stay off Amazon property—for which he was paid—due to a potential COVID-19 exposure.  Amazon necessarily took these actions because Mr. Smalls and Mr. Palmer deliberately violated Amazon's health and safety rules and directives and knowingly placed themselves and their co-workers at risk.

5.     Within hours of Mr. Smalls' termination, and before conducting any investigation to ascertain these or any other facts, the New York Attorney General publicly condemned Amazon's action.  The OAG then launched and pursued an investigation of Amazon's COVID-19 safety measures and allegations that Amazon retaliated against Mr. Smalls and Mr. Palmer for protesting working conditions and COVID-19 workplace safety practices at JFK8.

6.     Now, the State, represented by the OAG, purports to assert claims under New York Labor Law § 200 relating to COVID-19 workplace safety practices at JFK8 and DBK1 and claims under New York Labor Law §§ 215 and 740 relating to Amazon's alleged retaliation against Mr. Palmer and Mr. Smalls.  *See* Compl. ¶¶ 111–50.  The State seeks an injunction ordering Amazon to implement the State's preferred workplace-safety standards at JFK8 and DBK1.  The State also seeks an injunction "requiring Amazon to offer [Mr.] Smalls reinstatement" to his former position (with backpay) and "to rescind the discipline issued to [Mr.] Palmer," and emotional distress and liquidated damages for Mr. Smalls and Mr. Palmer.  *See* Compl. at pp. 28–29.  For at least two independent reasons, federal court is the proper forum for resolving this action.

7.      *First*, this Court has original diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.  The State is only a nominal party in this dispute and its citizenship should therefore be disregarded for purposes of diversity jurisdiction.  The real parties in interest in this dispute are the employees who work at Amazon's JFK8 fulfillment center in Staten Island and DBK1 delivery station in Queens.  The Complaint seeks to obtain relief on behalf of Amazon's employees at the JFK8 and DBK1 facilities—not the State.  Indeed, the State purports to assert claims under provisions of the New York Labor Law that provide only a private—not public—right of action.  Thus, the JFK8 and DBK1 employees, who are citizens of New York or New Jersey, are the real parties in interest, and their citizenship should be considered for purposes of diversity jurisdiction.  Because these employees are diverse from Amazon and the amount in controversy exceeds $75,000, federal diversity jurisdiction exists.

8.      *Second*, this Court has original federal question jurisdiction under 28 U.S.C. § 1331 because the issues alleged in the Complaint arise under and are governed by federal law and regulations.  Congress has entrusted the U.S. Department of Labor's Occupational Safety and Health Administration ("OSHA") with regulating occupational health and safety—including COVID-19-related workplace practices—and the National Labor Relations Board ("NLRB") with regulating labor practices, including the rights of employees to engage in concerted protected activity.  The State's claims seek to undermine and supplant these federal laws and regulations, and to instead substitute the State's judgment for that of Congress, OSHA, and the NLRB.  The Complaint thus challenges long-established federal statutory and regulatory frameworks and threatens to undermine fundamental divisions of federal and state responsibility.  The federal issues and implications of the Complaint and requests for relief must be resolved by a federal court.

## II.   TIMELINESS OF REMOVAL AND JURISDICTION

9.     The State filed its Complaint in the New York Supreme Court, New York County on February 16, 2021.  The State served Amazon with a copy of the Summons and Complaint on February 17, 2021.  As required by 28 U.S.C. § 1446(a), copies of all of the process, pleadings, and orders served upon Amazon in the Removed Action are attached to this Notice of Removal as Exhibit A.

10.     This Notice of Removal is timely under 28 U.S.C. § 1446(b) because it is filed within 30 days of the date of service of the Complaint on Amazon.

11.     Amazon denies any liability as to the State's claims, and expressly reserves all rights in this regard.  For purposes of meeting the jurisdictional requirements for removal only, however, Amazon submits that this action is removable on at least two independent grounds.  Amazon addresses each of these grounds in additional detail below.  If the State challenges this Court's jurisdiction, Amazon will further elaborate on these grounds.

## III.   THIS ACTION IS REMOVABLE BECAUSE THE COURT HAS ORIGINAL DIVERSITY JURISDICTION

12.     This Court has original diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is "complete diversity between all plaintiffs and all defendants" and "the amount in controversy exceeds $75,000."  *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005); *see* 28 U.S.C. § 1332(a).

### A.   Complete Diversity Exists Between The Parties

13.     Defendant Amazon.com, Inc. is incorporated in Delaware and has its principal place of business in Seattle, Washington.  Defendant Amazon.com Sales, Inc. is incorporated in Delaware and has its principal place of business in Seattle, Washington.  Defendant Amazon.com Services LLC is a Delaware limited liability corporation with its principal place of business in

Seattle, Washington; the sole member of Amazon.com Services LLC is Amazon.com Sales, Inc.

Accordingly, Defendants Amazon.com, Inc., Amazon.com Sales, Inc., and Amazon.com Services

LLC are citizens of the State of Delaware and the State of Washington.  *See* 28 U.S.C. § 1332(c)(1)

("a corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated

and of the State . . . where it has its principal place of business . . . ."); *WBCMT 2007-C33 NY

Living, LLC v. 1145 Clay Ave. Owner, LLC*, 964 F. Supp. 2d 265, 267 (S.D.N.Y. 3013) ("An LLC

has the citizenship of all its members.").

14.     The State is merely a nominal party, and, as noted, is not the real party in interest

in this dispute.  The Complaint seeks to obtain relief on behalf of employees who work at

Amazon's JFK8 and DBK1 facilities—not the State of New York.  These employees, who are

citizens of New York and New Jersey, are the real parties in interest, and their citizenship should

be considered for purposes of diversity jurisdiction.  Mr. Palmer and Mr. Smalls, on whose behalf

the State specifically seeks relief, are both citizens of New Jersey.

15.     In determining whether diversity jurisdiction exists, the citizenship of "nominal or

formal parties" is disregarded, and only the citizenship of those parties with a "real and substantial"

interest in the controversy are considered.  *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460–61

(1980).  Accordingly, when a state or state official files a lawsuit, but is not the "real party in

interest" to the dispute, the state's presence does not destroy diversity jurisdiction.  *See Ex Parte

Nebraska*, 209 U.S. 436, 444–46 (1908) ("[T]he mere presence on the record of the state as a party

plaintiff will not defeat the jurisdiction of the Federal court when it appears that the state has no

real interest in the controversy.").

16.     To determine whether the State of New York is a real party in interest, the Court

must consider "the essential nature and effect of the proceeding."  *Finkielstain v. Seidel*, 857 F.2d

893, 895 (2d Cir. 1988); *see also, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cavicchia*, 311 F. Supp. 149, 155 (S.D.N.Y. 1970) (same).  Courts have held that where a state or a state official files suit seeking redress for an identifiable group of citizens, those citizens—and not the state—are the real parties in interest.  *Conn. Comm'r of Labor v. AT&T Corp.*, 2006 WL 3332982, at *2–3 (D. Conn. Nov. 16, 2006) (state is not the "real party in interest" when it filed action "as Parens patriae for a circumscribed group of its citizens," rather than as "Parens patriae for the benefit of all its citizens"); *see also, e.g.*, *Connecticut v. Chubb Grp. of Ins. Cos.*, 2012 WL 1110488, at *2–4 (D. Conn. Mar. 31, 2012) (lawsuit filed by Commissioner of Labor alleging that defendant violated Connecticut's labor laws removable on the grounds that "there is diversity of citizenship because the State is not a real party in interest"); *Butler v. Cadbury Beverages, Inc.*, 1998 WL 422863, at *2 (D. Conn. July 1, 1988) (same).  Under these circumstances, "the citizen status of those individual citizens rather the sovereign status of the state, controls for diversity purposes."  *AT&T Corp.*, 2006 WL 3332982, at *2.

17.     The State of New York is bringing this action "as parens patriae for a circumscribed group of its citizens"—employees who work at Amazon's JFK8 and DBK1 facilities—rather than for the benefit of all its citizens.  *Chubb Grp.*, 2012 WL 1110488, at *3.  Indeed, during its investigation prior to filing the Complaint, the OAG actively coordinated strategy and shared information with JFK8 associates who filed a lawsuit against Amazon asserting nearly identical claims that Amazon's health and safety policies violate New York Labor Law § 200.  *See Palmer v. Amazon.com, Inc.*, No. 1:20-cv-2468 (BMC) (E.D.N.Y.).  The OAG entered into a common interest agreement with the *Palmer* plaintiffs and their counsel, Towards Justice and Make the Road.  As part of that agreement, the OAG stated that it, Towards Justice, and Make the Road "share[d] common interests and goals with respect to discussion of facts and legal principles

relevant to [the OAG's] Investigation, and/or [Towards Justice and Make the Road's] Lawsuit concerning Amazon's compliance with legal requirements relevant to protecting workers from COVID-19 and preventing spread of the virus to the public."

18.     It is clear on the face of the Complaint that the employees who work at Amazon's JFK8 and DBK1 facilities—not the State of New York—are the real parties in interest in this case. The State asserts claims under provisions of the New York Labor Law that "aim[] to recover damages for individuals," "not to provide any benefit to the State." *Chubb Grp.*, 2012 WL 1110488, at *3. The State brings claims under Sections 215 and 740, which create a private—not public—right of action for employees to sue their employers. N.Y. Lab. Law § 215(2)(a) ("[a]n employee may bring a civil action in a court of competent jurisdiction against any employer or person alleged to have violated the provisions of this section"); *id.* § 740(4)(a) ("[a]n employee who has been the subject of a retaliatory personnel action in violation of this section may institute a civil action in a court of competent jurisdiction"); *see* Compl. ¶¶ 115–50.[1] The State also asserts claims under Section 200, which "codifies" employers' obligation "to provide employees with a safe place to work" and provides employees a private right of action. *Jock v. Fien*, 80 N.Y.2d 965, 967 (1992); *see* Compl. ¶¶ 111–14. The OAG's authority under Section 200 is limited to "institut[ing] a proceeding to . . . enjoin further work in or occupancy of [an] area" after the Labor Commissioner "finds that [the] area . . . is in a dangerous condition." N.Y. Lab. Law § 200(2)–(3). The OAG did not (and could not) file suit or assert claims pursuant to this provision—indeed, the Labor Commissioner has not determined that an "area" in JFK8 or DBK1 is "in a dangerous condition," nor could she based on the facts.

---

[1]  Although Section 215 authorizes the Labor Commissioner to impose "a civil penalty" on an "employer or person" who "violate[s] any provision of this section," the statute does not authorize the OAG to file suit to enforce Section 215. N.Y. Lab. Law § 215(1)(b).

19.     Further, the Complaint seeks to secure relief for a circumscribed group of individual citizens—the employees at JFK8 and DBK1—rather than seeking relief on behalf of the State. The State seeks monetary damages to be paid to Amazon employees at JFK8 and DBK1, not the State: the State seeks backpay, emotional distress damages, and liquidated damages for Mr. Smalls and Mr. Palmer in connection with the Section 215 and Section 740 claims.  *See* Compl. at pp. 28–29.   The State also seeks injunctive relief that would benefit the employees at JFK8 and DBK1. Specifically, the State requests an injunction ordering Amazon to institute certain safety-related measures and "chang[e]" its employment "policies."  *Id*. at p. 28.   Further, the State also seeks an injunction requiring Amazon to offer Mr. Smalls "reinstatement to his former position of employment," and to "rescind the discipline issued to [Mr.] Palmer," *id.* at pp. 28–29—injunctive relief that would only benefit Mr. Smalls and Mr. Palmer.  Thus, the relief that the State seeks would benefit the employees at JFK8 and DBK1 but would "not inure to the benefit of the state as a state," which demonstrates that the State is not the real party in interest.  *Mo., Kan. & Tex. Ry. Co. v. Hickman*, 183 U.S. 53, 59 (1901); *see also, e.g.*, *Merrill Lynch*, 311 F. Supp. at 156–57 (concluding that "the State of New York is not a real party in interest" in lawsuit over assets of a fraudulent securities dealer because remedies sought were for defrauded New York citizens with verifiable claims, not the state).

20.     In sum, the State is only a "nominal or formal" party in this dispute, and the real parties in interest—the employees of JFK8 and DBK1—are diverse from Amazon.  *Navarro*, 446 U.S. at 460–61.   Thus, complete diversity exists between the parties.

**B.     The Amount In Controversy Exceeds $75,000**

21.     The $75,000 amount-in-controversy requirement is met.  28 U.S.C. § 1332(a).   A notice of removal "need include only a plausible allegation that the amount in controversy exceeds

the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).

22.     Although the State's Complaint does not include a specific demand for damages, the State's claims and allegations plainly put at least $75,000 in controversy.  For example, he State seeks, *inter alia*, "disgorgement" of Amazon's profits, alleging, "[o]n information and belief," that Amazon earned "approximately $28.5 million in additional profits from JFK8 and DBK1 alone during the pandemic." *Id.* at p. 29, ¶ 109.  Further, the State seeks "backpay, including lost compensation and benefits," for Mr. Smalls from the date of his termination, March 30, 2020—which was nearly one year ago. *See id.* at p. 28, ¶ 89.

23.     Although Amazon contends that the State is not entitled to any damages, a full and fair reading of the State's Complaint clearly shows that the amount in controversy exceeds $75,000.

## IV.     THIS ACTION IS INDEPENDENTLY REMOVABLE BECAUSE IT RAISES DISPUTED AND SUBSTANTIAL FEDERAL ISSUES

24.     This Court also has original federal question jurisdiction under 28 U.S.C. § 1331. The Supreme Court has held that suits alleging only state law causes of action nevertheless "arise under" federal law if the "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).  Applying this test "calls for a common-sense accommodation of judgment to [the] kaleidoscopic situations that present a federal issue." *Id.* at 313 (internal quotation marks omitted).

25.     The State's Section 200 claim seeks to supplant federal regulation of occupational health and safety and to require Amazon to implement its preferred COVID-19 workplace safety

10

standards at JFK8 and DBK1, thereby raising disputed and substantial federal issues.

26.     Congress has entrusted OSHA, the expert federal workplace health and safety agency, with regulating occupational health and safety—including COVID-19-related workplace safety matters.   Under the OSH Act, the Secretary of Labor is authorized to set "mandatory occupational safety and health standards applicable to businesses affecting interstate commerce." 29 U.S.C. § 651(b)(3).   The Act makes clear that states may "assume responsibility" for "occupational safety and health standards" only by submitting a plan to the Secretary of Labor.  29 U.S.C. § 667(b); *see Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98–99 (1992).  New York has submitted a plan for *public sector* employees, but *not* for private employees.  *See* OSHA, *New York State Plan*, https://tinyurl.com/y7cghkox.  New York has thus expressly *disclaimed* authority to promulgate standards in areas within OSHA's jurisdiction.  *See* N.Y. Lab. Law § 27(1).

27.     Thus, the Section 200 claim necessarily raises the issue whether the State may, by lawsuit, enforce COVID-19 occupational safety and health standards under New York law, which requires "interpretation and application of" federal law.  *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 100 (2d Cir. 2001).  New York "cannot enforce state occupational safety and health standards for issues covered by a federal standard."  *Palmer v. Amazon.com, Inc.*, 2020 WL 6388599, at *9 (E.D.N.Y. Nov. 2, 2020).  Therefore, to determine whether the State can seek injunctive relief imposing its own COVID-19 health and safety standards under New York law, a court must first determine whether COVID-19 workplace safety issues are "covered by a federal standard," *id.*—which, in turn, requires interpretation and application of the OSH Act and OSHA's regulations, and is "inherently federal in character."  *Buckman Co. v. Pls.' Legal Comm.*, 531 U.S. 341, 347 (2001).

28.    OSHA has made clear that "existing [federal] standards for, *inter alia*, personal protective equipment, general environmental controls, and toxic and hazardous substances" govern employers' operations in response to COVID-19.  *Palmer*, 2020 WL 6388599, at *5; *see* Dep't of Labor Br. 21–23, *In re AFL-CIO*, No. 20-1158 (D.C. Cir. May 29, 2020) ("DOL Br.").   For example, existing federal standards require employers to protect employees from atmospheric contaminants, including airborne biological diseases.  *See* 29 C.F.R. § 1910.134; *Respiratory Protection Final Rule*, 63 Fed. Reg. 1152, 1180 (Jan. 8, 1998).   Similarly, OSHA's sanitation standards require employers to provide potable water and a sufficient number of toilet and washing facilities, including running water and hand soap or similar cleaning agents.  *See* 29 C.F.R. § 1910.141.   And OSHA has made clear that the OSH Act's general-duty clause, 29 U.S.C. § 654(a)(1), also applies to "employers who fail to take preventative measure against COVID-19." DOL Br. 25.

29.    The OAG itself agrees that the alleged COVID-19 workplace safety issues at JFK8 are governed by existing federal laws and standards enforced by OSHA.  On April 22, 2020, the OAG sent Amazon a letter "express[ing] certain preliminary assessments and, pending further investigation, request[ing] certain immediate relief."  The letter asserted that Amazon's conduct "would likely violate both specific OSHA safety standards applied specifically to this crisis by the OSHA Guidance, and the OSHA general duty clause."   According to the OAG, "29 C.F.R. § 1910.132, specifically applied to the COVID-19 epidemic by the OSHA Guidance, required making available types of PPE required during a COVID-19 outbreak, including sufficient gloves and masks."  The OAG further stated that "carrying on business in an inadequately sanitized and disinfected workplace would violate 29 C.F.R. § 1910.22 and § 1910.141."  And the OAG made clear that "[t]o the extent those specific standards did not apply," "most of the hazards of which

Mr. Smalls complained, including failure to sanitize the facility, failure to inform employees of their exposure to COVID-19, and failure to provide adequate PPE, were 'recognized' hazards under OSHA's general duty clause."

30.     Reinforcing the federal nature of the OAG's claims, President Biden recently issued an Executive Order directing OSHA to take several additional actions regarding COVID-19, including issuing new COVID-19 safety guidance to employers by February 4, 2021.  *See* Exec. Order No. 13,999, 86 Fed. Reg. 7211 (Jan. 26, 2021).

31.     Pursuant to this Executive Order, on January 29, 2021, OSHA issued guidance "intended to . . . help [employers] determine appropriate control measures to implement."[2]  This guidance "contains . . . descriptions of mandatory safety and health standards" as well as "recommendations [that] are advisory in nature, informational in content, and are intended to assist employers in providing a safe and healthful workplace."

32.     OSHA's January 29 guidance makes clear that "[a]ll of OSHA's standards that apply to protecting workers from infection remain in place," including "requirements for PPE, respiratory protection, sanitation, protection from bloodborne pathogens, and OSHA's requirements for employee access to medical and exposure records."  In addition, "employers still are required under the General Duty Clause, Section 5(a)(1) of the OSH Act, to provide a safe and healthful workplace that is free from recognized hazards that can cause serious physical harm or death."[3]  The January 29 OSHA guidance therefore demonstrates that OSHA remains active at the federal level in policing employers' workplace safety responses to the COVID-19 pandemic.

---

[2]  OSHA, *Protecting Workers:  Guidance on Mitigating and Preventing the Spread of COVID-19 in the Workplace* (Jan. 29, 2021), https://tinyurl.com/49vu8t7o.

[3]  *Id.* (citations omitted).

33.     President Biden's Executive Order also directs OSHA to "consider whether any emergency temporary standards on COVID-19, including with respect to masks in the workplace, are necessary," and if it determines such standards are necessary, to issue emergency temporary standards by March 15, 2021, Exec. Order No. 13,999, 86 Fed. Reg. at 7211, thus raising the prospect of additional federal standards governing employers' operations in response to COVID-19.

34.     The State's requests for injunctive relief under Section 200 seeks to supersede these federal standards and to impose new state-law workplace safety standards at JFK8 and DBK1. Accordingly, "the validity of [the State's] claims would require that conduct subject to an extensive federal [regulatory] scheme is in fact subject to implicit restraints that are created by state law." *Bd. of Comm'rs of Se. La. Flood Protection Auth.-E. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 724 (5th Cir. 2017); *id.* at 725 (affirming federal jurisdiction under *Grable* where "the scope and limitations of a complex federal regulatory framework are at stake"); *see also Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*, 559 F.3d 772, 779 (8th Cir. 2009) (affirming federal question jurisdiction where state law claims implicated federal agency's acts implementing federal law).

35.     Moreover, the State's Section 200 claim also necessarily raises substantial federal questions because the State seeks to convert non-binding agency guidance into legally binding requirements, enforceable under Section 200.  In particular, the State asserts Section 200 claims based on Amazon's purported failure to comply with guidance from the U.S. Department of Health and Human Services Centers for Disease Control and Prevention ("CDC") and the New York Forward guidance (which incorporates CDC guidance). *See, e.g.*, Compl. ¶¶ 51–53, 108.  Indeed, the State contends that this non-binding agency guidance "establishes the measures employers

should institute . . . to satisfy their obligations under Labor Law § 200." *Id.* ¶ 2. The State's attempt to convert agency guidance into a Section 200 workplace-safety regime necessarily raises disputed and substantial federal issues, such as the legal effect of the federal guidance under the Administrative Procedure Act, 5 U.S.C. § 553, and whether Amazon may, consistent with the protections of Due Process under the U.S. Constitution, be held liable under agency guidance, *see FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

36.     The State's Section 215 and Section 740 claims similarly raise disputed and substantial federal issues. The State asserts claims under Section 215 and Section 740 based on Amazon's purported retaliation against Mr. Smalls and Mr. Palmer for their protests of working conditions and COVID-19 workplace safety practices at JFK8, *see* Compl. ¶¶ 115–39, thereby seeking to regulate concerted activity that is protected by the National Labor Relations Act ("NLRA") and within the exclusive jurisdiction of the NLRB.

37.     The NLRA protects employees who "engage in . . . concerted activities for the purpose of collective bargaining or other mutual aid or protection," 29 U.S.C. § 157, and Congress has entrusted the NLRB, "a centralized administrative agency, armed with its own procedures, and equipped with its specialized knowledge and cumulative experience," to regulate "labor policy and administration," *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 242 (1959). Thus, "States may not regulate activity that the NLRA protects, prohibits, or arguably protects or prohibits." *Wisconsin Dep't of Industry, Labor & Human Relations v. Gould Inc.*, 475 U.S. 282, 286 (1986). The Supreme Court has further explained that "[i]t is essential to the administration of the [NLRA]" that "determinations" whether a "particular activity" is governed by the NLRA "be left in the first instance to the [NLRB]," *Garmon*, 359 U.S. at 244–45.

38.     The NLRB has made abundantly clear that the NLRA prohibits retaliation against

employees who engage in concerted activity, such as protesting, regarding their employer's efforts to address COVID-19.  For example, "after a group of employees protested . . . [an] alleged failure to provide personal protective equipment (PPE), such as gloves, masks and hand sanitizer, and to enforce social distancing guidelines," the NLRB directed its Regional Office "to issue complaint absent settlement alleging that the Employer violated Section 8(a)(1) of the Act by unlawfully discharging the employee who led protected concerted efforts to secure PPE and to enforce social distancing."  *See* Peter B. Robb, General Counsel, NLRB, *Summaries of Advice Merit Determinations Related to Coronavirus Disease 2019 Issues* 2 (Sept. 18, 2020).

39.    The OAG itself admits that claims of retaliation against employees who engage in concerted activity concerning their employers' COVID-19 workplace safety practices are governed by the NLRA and fall within the jurisdiction of the NLRB.  On March 30, 2020, shortly after Amazon terminated Mr. Smalls' employment for his repeated, blatant disregard of policies designed to protect the health of his co-workers, the New York Attorney General posted a tweet and issued a statement criticizing Amazon's actions with respect to Mr. Smalls and "calling on the *National Labor Relations Board* to investigate."[4]

40.    The State's Section 215 and Section 740 claims that Amazon retaliated against Mr. Smalls and Mr. Palmer for engaging in concerted activity thus seek to supplant federal law and to subject an area within the exclusive authority of federal regulators to state law and regulation, thereby raising a disputed and substantial issue of federal law.  *See Bd. of Comm'rs of Se. La.*, 850 F.3d at 724.

41.    Adjudicating the State's claims in federal court is thus appropriate because the

---

[4]  New York State Office of the Attorney General, *AG James' Statement on Firing of Amazon Worker Who Organized Walkout* (Mar. 30, 2020), https://tinyurl.com/y3a9n8ql. (emphasis added); *accord* New York State Attorney General Letitia James (@NewYorkStateAG), Twitter, (Mar. 30, 2020, 10:15 PM), https://tinyurl.com/y53bevme.

relief sought by the State would necessarily alter the regulatory regimes that Congress designed and that OSHA and the NLRB implement and enforce, which potentially disrupts the uniform application of federal law across the country. *See, e.g.*, *Grable*, 545 U.S. at 312 (stating that claims that turn on substantial federal questions "justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues"); *Bd. of Comm'rs of Se. La.*, 850 F.3d at 725 (holding that federal jurisdiction was appropriate because "the scope and limitations" of federal framework were at stake, and deciding "whether that framework may give rise to state law claims as an initial matter will ultimately have implications for the federal docket one way or the other"); *West Virginia ex rel. McGraw v. Eli Lilly & Co.*, 476 F. Supp. 2d 230, 234 (E.D.N.Y. 2007) (stating that removal under *Grable* is appropriate where state common law claims implicate "an intricate federal regulatory scheme . . . requiring some degree of national uniformity in interpretation").

42.     Accordingly, the State's claims necessarily raise disputed and substantial federal questions that belong in a federal forum. This Court thus has federal question jurisdiction under 28 U.S.C. § 1331 and removal is proper.[5]

## V.     THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER

43.     Based on the allegations from the Complaint set forth above, this Court has original jurisdiction over this action under 28 U.S.C. §§ 1331, 1332, and 1367. Accordingly, removal of this action is proper under 28 U.S.C. § 1441.

44.     Pursuant to 28 U.S.C. § 1441(a), the United States District Court for the Southern District of New York is the proper place to file this Notice of Removal because it is the district

---

[5]  To the extent the Court construed any of the State's claims as arising under state law, this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy as the claim over which the Court has original jurisdiction.

court for the federal district embracing the place where the Removed Action was filed and is pending.

45.    In accordance with 28 U.S.C. § 1446(d), promptly after the filing of this Notice of Removal in this Court, Amazon will (i) give written notice thereof to Plaintiff; and (ii) file a copy of this Notice of Removal with the Clerk of the Supreme Court of New York, New York County, effectuating the removal.  Amazon will promptly file proof of the foregoing with this Court.

46.    By filing this Notice of Removal, Amazon does not waive any claim, argument, or defense which may be available to it, including objections to venue, nor does Amazon concede that Plaintiff has pleaded any claim upon which relief may be granted.

## VI.    <u>CONCLUSION</u>

47.    For the foregoing reasons, the Removed Action is hereby removed to the United States District Court for the Southern District of New York.  Amazon respectfully requests that the Court enter such orders and grant such other and further relief as may be necessary to effectuate the removal.  Amazon reserves the right to supplement and/or amend this Notice of Removal.

Dated: February 17, 2021

GIBSON, DUNN & CRUTCHER LLP


By:   */s/ Zainab Ahmad*
Zainab Ahmad
Mylan L. Denerstein
200 Park Avenue
New York, NY 10166
(212) 351-4000
zahmad@gibsondunn.com
mdenerstein@gibsondunn.com

Jason C. Schwartz*
Lucas C. Townsend*
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

jschwartz@gibsondunn.com
ltownsend@gibsondunn.com

*Pro hac vice motion forthcoming*

*Attorneys for Defendants Amazon.com, Inc.,
Amazon.com Sales, Inc., and Amazon.com
Services LLC*