UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK,<br><br>　　　　Plaintiff,<br><br>　　-against-<br><br>AMAZON.COM, INC., et al.,<br><br>　　　　Defendants. | 21-cv-1417 (JSR)<br><br>OPINION & ORDER |

JED S. RAKOFF, U.S.D.J.

The State of New York by and through Letitia James, Attorney General of the State of New York (the "Attorney General" or "New York"), sued Amazon.com Inc., Amazon.com Sales, Inc., and Amazon.com Services LLC (collectively, "Amazon") in the New York Supreme Court, New York County for violations of New York Executive Law § 63(12) and New York Labor Law §§ 200, 215, and 740. New York alleges that Amazon inadequately implemented worker safety protocols in response to the COVID-19 pandemic and retaliated against workers who protested unhygienic work conditions. The next day, Amazon removed the action to federal court, asserting that this Court has subject matter jurisdiction on diversity and federal question grounds.

New York then moved to remand the case to state court pursuant to 28 U.S.C. § 1447 and Amazon moved to transfer the case to the

U.S. District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1404(a). By bottom-line order dated April 9, 2021, the Court granted New York's motion and denied Amazon's motion. ECF No. 35. This Opinion states the reasons for that decision and directs the Clerk to enter judgment and close the case.

FACTUAL AND PROCEDURAL BACKGROUND

I.  Factual Background

The Complaint alleges the following facts. COVID-19 is a deadly respiratory disease caused by a novel and highly contagious coronavirus. Compl. ¶ 17. The novel coronavirus spreads through person-to-person contact and is more transmissible when individuals gather within six feet of one another for longer than 15 minutes over a 24-hour period. Id. at ¶ 18. Mildly symptomatic, pre-symptomatic, and even asymptomatic individuals can spread the virus. Id. at ¶ 19. The resulting disease can ravage the lungs, shut down the organs, and cause severe neurological malfunctions. Id. The first confirmed case of COVID-19 in New York was reported on March 1, 2020. Id. at ¶ 22.

In March 2020, the New York state legislature amended the Executive Law to authorize Governor Cuomo to issue directives necessary to address epidemics and disease outbreaks. Id. at ¶ 25. A series of executive orders affecting New York businesses followed. Id. Governor Cuomo declared a statewide disaster emergency, curtailed nonessential business operations, and

directed the Empire State Development Corporation (ESD) to issue guidance and directives on required closures and the steps necessary to maintain a safe work environment during the pandemic. Id. at ¶¶ 25-29. ESD issued guidance that categorized "warehouse/distribution and fulfillment" as essential and, accordingly, Amazon's fulfillment and distribution centers were not ordered closed. Id. at ¶ 28. Instead, essential businesses like Amazon were directed to "comply with the guidance and directives for maintaining a clean and safe work environment issued by the Department of Health." Id. at ¶ 30. In May, Governor Cuomo issued another executive order "authorizing a phased re-opening of non-essential businesses," similarly "subject to the guidelines promulgated by the Department of Health." Id. at ¶ 31.

The Department of Health issued industry-specific minimum safety standards in June 2020. See id. at ¶ 32. These minimum standards incorporated by reference Centers for Disease Control ("CDC") cleaning guidance issued in February 2020. Id. at ¶ 34. This guidance recommended that facilities: (1) enforce social distancing where possible; (2) encourage regular handwashing; (3) close areas used by infected employees, ventilate affected areas, and wait at least 24 hours before beginning to clean those areas; and (4) cooperate with state and local health departments to implement a contact-tracing program that includes investigation of

COVID-19 cases and prompt notification to employees who may have been exposed to the virus. Id. at ¶¶ 35-38.

Amazon is a Washington-based e-commerce retailer, incorporated in Delaware, that distributes goods nationwide. Id. at ¶¶ 14-16. Amazon operates two facilities in New York: JFK8, a Staten Island fulfillment center, and DBK1, a Queens distribution center. Id. at ¶¶ 3, 45. At Amazon fulfillment and distribution centers, continued employment depends on productivity as measured by digital devices that scan bins and packages to be shipped, record how many units are processed per hour, and calculate the amount of time employees spend "off task." Id. at ¶¶ 56-59. If an employee's time off task drops below certain established thresholds known only to managers, the employee could face termination. Id. at ¶¶ 59-61.

Most workers at JFK8 and DBK1 continued to work on-site after New York became the epicenter of the COVID-19 pandemic. Id. at ¶¶ 4, 45-46. At various times since the coronavirus outbreak, Amazon has allegedly: (1) failed to implement site closure, disinfection, and cleaning protocols when workers infected with COVID-19 had been present at JFK8 and DBK1 within the previous seven days, (2) neglected to create a robust contact-tracing program, and (3) refused to soften its productivity-related discipline policies to allow its workers sufficient time for handwashing and hygiene practices. Id. at ¶ 4. Though Amazon claims

that it paused productivity-related discipline in March 2020, Amazon did not notify workers of this change until July 10, 2020. Id. at ¶ 63. The practice resumed in October 2020. Id. at ¶ 64.

In late March, two employees at JFK8, Christian Smalls, a "process assistant" who had been promoted to a management position, and Derrick Palmer, a "process guide warehouse associate," raised concerns with their managers and with the media about Amazon's pandemic response. Id. at ¶ 78. Both had worked at Amazon since 2015, had a history of good work performance, and had received positive feedback from supervisors. Id. at ¶¶ 79-80. During the week of March 22, Smalls and Palmer, along with a dozen other employees, approached JFK8 managers to ask that Amazon close the facility for proper cleaning. Id. at ¶¶ 80-83.

On March 30, Smalls and Palmer protested Amazon's pandemic response in front of JFK8. Id. at ¶ 88. Amazon fired Christian Smalls in late March 2020 for violating quarantine and social-distancing protocols by attending the protest after being exposed to COVID-19, though Smalls did not enter the facility during his quarantine period and instead remained on an adjacent sidewalk during the protest. Id. at ¶¶ 5, 88-89. In early April 2020, Amazon sent Derrick Palmer a disciplinary letter termed a "final written warning," reprimanding Palmer for attending the protest and violating social distancing policies. Id. at ¶¶ 5, 95.

It is further alleged that Smalls and Palmer are two of many Amazon employees who "reasonably fear that if they make legitimate health and safety complaints about Amazon's COVID-19 response, Amazon will retaliate against them as well." Id. at ¶ 99. Since April 2020, Amazon has allegedly continued to prioritize increased worker productivity and profit margins over compliance with state health and safety guidance. Id. at ¶¶ 100-06, 108. During the pandemic alone, Amazon has earned over $160 billion in profits, a $30 billion increase from its pre-pandemic performance. Id. at ¶ 109. About $28.5 million in profits can be traced to Amazon's facilities in New York. Id.

## II. Procedural Background

On February 16, 2021, the New York Attorney General sued Amazon in the New York Supreme Court, New York County, alleging that Amazon's inadequate disinfection and contract-tracing protocols, its prioritization of productivity policies over sanitation and social-distancing practices, and its termination of workers who protested Amazon's COVID-19 response violated New York Labor Law §§ 200, 215, and 740. See Compl., ECF No. 1. Section 200 requires New York businesses to be "constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein." N.Y. Labor L. § 200. Section 215 prohibits employers from discriminating or retaliating against employees who

bring potential state labor law violations to the attention of the employer, a labor commissioner, an authorized representative, or the Attorney General. N.Y. Labor L. § 215(1)(a). Finally, section 740 prohibits employers from taking retaliatory action against employees who disclose or threaten to disclose to a supervisor or to a governmental authority that an employer has violated a law, rule, or regulation and has thereby "present[ed] a substantial and specific danger to the public health or safety." N.Y. Labor L. § 740(2)(a).

The state court complaint premised the Attorney General's right to sue on New York Executive Law § 63(12), which empowers the Attorney General to seek injunctive and other relief against entities that "engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business" in New York. See N.Y. Exec. Law § 63(12). The Attorney General sought injunctive relief against Amazon's allegedly unlawful practices; an order directing Amazon to notify employees of their Labor Law rights and to provide related training to supervisors; backpay, lost compensation and benefits, liquidated damages, and emotional distress damages on behalf of Christian Smalls; emotional distress damages and liquidated damages on behalf of Derrick Palmer; and disgorgement of ill-gotten profits under Executive Law § 63(12).

On February 17, 2021, Amazon filed a notice of removal in the Southern District of New York pursuant to 28 U.S.C. §§ 1331, 1332, 1367, and 1441. Five days before the instant action commenced, Amazon filed a complaint against the New York Attorney General in the Eastern District of New York, seeking a declaration that state regulation of Amazon's COVID-19 response is preempted by federal law. See Schwartz Decl., ECF No. 24, at Ex. A.

On March 3, 2021, New York moved to remand this case to state court. ECF No. 19. That same day, Amazon moved to transfer this case to the Eastern District of New York. ECF No. 17.

                                DISCUSSION

A defendant may remove to federal court "any civil action . . . of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). The federal district courts are courts of limited subject-matter jurisdiction. Purdue Pharma L.P. v. Kentucky, 704 F.3d 208, 213 (2d Cir. 2013). This Court has diversity jurisdiction over certain disputes between citizens of different states pursuant to 28 U.S.C. § 1332 and federal question jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States" pursuant to 28 U.S.C. § 1331. Id. Neither ground supports the exercise of jurisdiction over this action.

I.   Diversity Jurisdiction

Federal courts have diversity jurisdiction over suits in which no plaintiff is a citizen of the same state as any defendant and the amount-in-controversy exceeds $75,000. See 28 U.S.C. § 1332. There is no diversity jurisdiction over this action, because the State of New York is the real party in interest and its presence destroys diversity.

"[A] state is not a 'citizen' for purposes of the diversity jurisdiction." Moor v. County of Alameda, 411 U.S. 693, 717 (1973). Thus, a suit between a state and a citizen of a different state does not create diversity jurisdiction. See, e.g., State Highway Comm'n of Wyoming v. Utah Const. Co., 278 U.S. 194, 199 (1929) (explaining the "well-settled" principle that a suit between a state and a citizen of another state is not a suit between citizens of different states). However, "because a State's presence as a party will destroy complete diversity," when a state or state official brings suit, courts consider whether the state is the real party in interest before concluding that diversity jurisdiction does not lie. Mississippi ex rel. Hood v. AU Optronics Corp., 571 U.S. 161, 174 (2014).

The real-party-in-interest analysis requires "consideration of the nature of the case as presented by the whole record," rather than a claim-by-claim analysis. See Purdue Pharma, 704 F.3d at 218 (quoting Ferguson v. Ross, 38 F. 161, 162–63 (C.C.E.D.N.Y. 1889)).

When a holistic review of the complaint reveals that a state "merely asserts the personal claims of its citizens, [the state] is not the real party in interest." See In re Baldwin-United Corp., 770 F.2d 328, 341 (2d Cir. 1985); see also id. at 219.

Here, the State is the real party in interest. While the State seeks backpay and emotional distress damages on behalf of Smalls and Palmer, the Attorney General also asserts a right that only the Attorney General can enforce. See, e.g., In re Standard & Poor's Rating Agency Litig., 23 F. Supp. 3d 378, 404 (S.D.N.Y. 2014) (finding that the state's status as real party in interest is "manifest" when "the case is brought by the state attorney general under his exclusive authority"). In particular, while Executive Law § 63(12) authorizes the Attorney General to seek injunctive and other relief "in the name of the people of the State of New York," the Attorney General can seek disgorgement of profits on the State's behalf. See People ex rel. Schneiderman v. Greenberg, 54 N.E.3d 74, 77 (N.Y. 2016); People ex rel. Spitzer v. Applied Card Sys., Inc., 894 N.E. 2d 1, 14-15 (N.Y. 2008) (noting that the Attorney General may "obtain disgorgement -- an equitable remedy distinct from restitution [to aggrieved consumers] -- of profits that respondents derived"); People v. Ernst & Young, LLP, 980 N.Y.S.2d 456, 457 (1st Dep't 2014) (finding the disgorgement remedy available to the Attorney General under section 63(12) even without direct losses to New York consumers or the public). When

the Attorney General seeks disgorgement of profits, the beneficiary is the State treasury. See, e.g., United States v. Twin America, LLC, 2015 WL 9997203, at *2 (S.D.NY. Nov. 17, 2015) (ordering that profits disgorged under section 63(12) be paid to the State of New York through its Budget & Fiscal Management Bureau). Thus, the State has an interest in the outcome of this litigation separate from the personal interests of its citizens.

In addition to the State's financial interest, "[t]he State's goal of securing an honest marketplace in which to transact business is a quasi-sovereign interest" independent from the interests of individual citizens. See New York ex rel. Abrams v. Gen. Motors Corp., 547 F. Supp. 703, 705-706 & n.5 (S.D.N.Y. 1982) (finding New York the real party in interest in a suit brought under New York Executive Law § 63(12) and remanding to state court); see also In re Standard & Poor's, 23 F. Supp. 3d at 404-405. Amazon quibbles with the applicability of the "honest marketplace" rationale here, arguing that the phrase implies fraud, which the Attorney General has not alleged. But the State's statutory interest under § 63(12) encompasses the prevention of either "fraudulent or illegal" business activities. Misconduct that is illegal for reasons other than fraud still implicates the government's interest in guaranteeing a marketplace that adheres to standards of fairness, as well ensuring that business transactions in the state do not injure public health. Thus, the

State does not sue "only as an agent, but also as [a party] who has [its] own stake in the litigation." See Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 194 (2d Cir. 2003) (holding that the real party in interest for diversity jurisdiction purposes depends on whether a plaintiff brings suit in a solely representative capacity).

Amazon argues that the fired workers, Smalls and Palmer, are the real parties in interest -- and that as New Jersey citizens, Smalls and Palmer are diverse from Amazon, which maintains a principal place of business in Washington. But the State's decision to seek damages on behalf of Smalls and Palmer is incidental to the State's other interests. Courts in this district have previously recognized that where "a state seeks both injunctive relief against illegal business practices and restitution for victims," these purposes cannot "be separated from each other" and neither should be characterized as the "primary" interest in the case. People of New York ex rel. Cuomo v. Charles Schwab & Co., 2010 WL 286629, at *6 (S.D.N.Y. Jan. 19, 2010). As the Second Circuit has indicated, for diversity jurisdiction purposes, the presence of interested individual citizens "does not necessarily negate" a plaintiff state's interest. Purdue Pharma, 704 F.3d at 220.

Amazon insists that the Supreme Court's ruling in Mo., Kan., & Tex. Ry. Co. v. Hickman, 183 U.S. 53 (1901), counsels against

finding that New York is the real party in interest in this case. In *Hickman*, which involved a state-created rail commission, the Supreme Court noted that the state's "governmental interest in the welfare of all its citizens . . . is not that which makes the state, as an organized political community, a party in interest in the litigation." *Id.* at 60. The state's interest here is more specific than that -- it is the interest in securing safe and fair conditions for the transaction of business within its borders.

*Hickman* also holds that "the state is such a real party when the relief sought is that which inures to it alone." *Id.* at 59. The State here seeks relief -- disgorgement of profits -- that only the State can seek. This distinguishes this case from *Hickman*, where the lawsuit was "not an action to recover any money for the state" and "[i]ts results will not inure to the benefit of the state as a state in any degree." *Id.* Whether the money the state obtains will ultimately benefit certain Amazon workers is not relevant where, as here, "the moneys recovered were payable into the treasury of the state." *See id.* Because New York is a real party in interest in this case, its presence destroys diversity, and there is no federal jurisdiction under 28 U.S.C. § 1331.

II. Arise-Under Jurisdiction

A complaint that does not allege a federal cause of action "arises under" federal law only when (1) Congress expressly provides for removal of such state law claims, (2) the state law

claims are completely preempted, or (3) the state law right turns on a question of federal law. See Fracasse v. People's United Bank, 747 F.3d 141, 142–44 (2d Cir. 2014) (per curiam); see also Grable & Sons Metal Prods., Inc. v. Dare Eng'g & Mfg., 545 U.S. 308, 312 (2005); Gunn v. Minton, 568 U.S. 251, 258 (2013). Amazon does not (and cannot) argue that Congress has expressly provided for the removal of state law labor claims. Thus, the Court addresses only whether complete preemption or the test articulated in Grable and Gunn permit the exercise of federal jurisdiction.

A.  Complete Preemption

Ordinary (also known as defensive) preemption is insufficient to create arise-under jurisdiction. "[A] case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987) (emphasis in original). Rather, for removal to federal court to be proper on preemption grounds, a federal statute must completely preempt state law claims. See id. at 393; Franchise Tax Bd. v. Constr. Laborers Vacation Trust et al., 463 U.S. 1, 14 (1983). Complete preemption exists when Congress has developed an all-encompassing regulatory scheme that leaves no room for the state action at issue. See, e.g., Avco Corp. v. Machinists, 390 U.S. 557, 560–61 (1968) (LMRA);

Metro Life Ins. Co. v. Taylor, 481 U.S. 58, 66-67 (1987) (ERISA).
The Supreme Court has identified only three statutes with such
extraordinary preemptive force: Section 301 of the Labor-
Management Relations Act (LMRA), Section 502(a) of the Employee
Retirement Income Security Act (ERISA), and Sections 85 and 86 of
the National Bank Act. See Sullivan v. Am. Airlines, Inc., 424
F.3d 267, 272 (2d Cir. 2005).

    The Occupational Safety and Health Act (OSHA), on which Amazon
here relies, has not joined the ranks of the LMRA, ERISA, and the
National Bank Act for these purposes. The Supreme Court has
considered the preemptive effect of OSHA and concluded that
"Congress expressly saved two areas from federal pre-emption"
under the Act: (1) workers' compensation and (2) occupational
safety and health issues for which "no federal standard is in
effect." Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 97
(1992). Moreover, OSHA gives states the options of avoiding federal
regulation entirely by submitting to the Secretary of Labor a state
plan for the development of occupational safety and health
standards in a particular area. Id.; see also 29 U.S.C. § 667(b).
Thus, OSHA does not completely preempt state law claims such that
it displaces all state causes of action. Cf. Franchise Tax Bd.,
463 U.S. at 23 (explaining that the preemptive effect of LMRA § 301
"is so powerful as to displace entirely any state cause of
action").

Further, the Palmer case on which Amazon repeatedly relies is clear that OSHA does not preempt claims under New York Labor Law § 200 even defensively. See Palmer v. Amazon.com, Inc., 2020 WL 6388599, at *1 (E.D.N.Y. Nov. 2, 2020). In Palmer, the district court reasoned that Congress "reserv[ed] for state regulation those issues not governed by a federal standard" and found that Amazon's alleged failure to implement adequate COVID-19 protocols in violation of New York Labor Law § 200 "does not conflict with an existing federal standard." Id. at *8. The district court therefore held that it "[could ]not find that plaintiffs' § 200 claim is preempted by the OSH Act." Id.

Similarly, the Supreme Court has declined to identify the NLRA (on which Amazon also relies) as one of the vanishingly few statutes that completely preempt state law claims. See Caterpillar, 482 U.S. at 398 (observing that "[t]he fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under the NLRA does not establish that they are removable to federal court"). While Congress indeed delegated to the National Labor Relations Board (NLRB) the authority to regulate labor policy and administration, Congress "has never exercised authority to occupy the entire field in the area of labor legislation." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 208 (1985). Accordingly, the NLRA does not completely preempt state

law claims such that these claims arise under the laws of the United States.[1]

B. <u>The Gunn-Grable Test</u>

"[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." <u>Gunn</u>, 568 U.S. at 258; <u>accord</u> <u>Grable</u>, 545 U.S. at 308; NASDAQ OMX Grp. V. UBS Sec., LLC, 770 F.3d 1010, 1020 (2d Cir. 2014) (applying the "<u>Gunn-Grable</u> test"). There is no federal jurisdiction under the test articulated in <u>Grable</u> and <u>Gunn</u>.

1. <u>A federal issue is not necessarily raised.</u>

A federal issue is not "necessarily raised" when it "becomes relevant only by way of a defense to an obligation created entirely by state law." <u>Franchise Tax Bd.</u>, 463 U.S. at 13; <u>see also</u> <u>Tantaros v. Fox News Channel, LLC</u>, 427 F. Supp. 3d 488, 494 (S.D.N.Y. 2019).

---

[1] Amazon correctly points out that, in certain cases, the NLRB should determine whether a company has instituted unfair labor practices in the first instance. <u>See</u> <u>San Diego Bldg. Trades Council v. Garmon</u>, 359 U.S. 236, 245 (1959) (holding that the NLRB has exclusive original jurisdiction over claims of unfair labor practices under sections 7 and 8 of the NLRA, the collective bargaining and employee coercion provisions). But "defendants may not remove state claims to federal court by alleging <u>Garmon</u> preemption." <u>Sullivan</u>, 424 F.3d at 277. Even if <u>Garmon</u> were to apply here, this case would belong neither in federal court nor in state court, but before the NLRB. <u>See, e.g.</u>, <u>TKO Fleet Enterprises, Inc. v. Dist. 15, Int'l Ass'n of Machinists & Aerospace Workers, AFL--CIO</u>, 72 F. Supp. 2d 83, 87 (E.D.N.Y. 1999).

The federal issue must be "an essential element" of the state law claim such that "the claim's very success depends on giving effect to a federal requirement." <u>Merrill Lynch, Pierce, Fenner & Palmer Inc. v. Manning</u>, 136 S. Ct. 1562, 1570 (2016).

Amazon has invoked defensive rather than "complete" preemption. Accordingly, the NRLA and OSHA preemption issues that Amazon discusses in its notice of removal are not necessarily raised but are rather "relevant only by way of a defense." <u>Franchise Tax Bd.</u>, 463 U.S. at 13.

Amazon also identifies as a potential federal issue whether CDC guidance is binding under the Administrative Procedure Act (APA). However, the meaning and effect of CDC guidance are not part and parcel of the relevant New York Labor Law claim. The State sues under New York Labor Law § 200, which requires employers "to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein." N.Y. Labor L. § 200. The State argues that CDC guidance can inform what constitutes "reasonable and adequate protection" and alleges that New York state guidance echoes the CDC's warnings and suggested protocols. But the state law claim does not rise and fall with the CDC guidance's binding effect. The CDC guidance may be purely advisory but nevertheless describe a minimum standard for protecting the health and safety of workers.

2. <u>The federal issues are not substantial.</u>

For a federal issue to be substantial, it must be important "to the federal system as a whole," implicating the federal interest in claiming the advantages of a federal forum. <u>See</u> <u>Gunn</u>, 568 U.S. at 260. A purely legal question "is more likely to be a substantial federal question." <u>Fracasse</u>, 747 F.3d at 145. In <u>Empire</u> <u>Healthchoice Assurance, Inc. v. McVeigh</u>, 547 U.S. 677 (2006), for instance, the Supreme Court distinguished <u>Grable</u> as presenting a "nearly pure issue of law," whereas the claim over which the Court found no subject matter jurisdiction was "fact-bound and situation-specific," and thus a state court would be "competent to apply federal law, to the extent it is relevant." <u>Id.</u> at 681.

An issue is not important to the federal system when a federal law is raised only as an indicator of reasonable conduct or public policy. For example, in <u>Fracasse v. People's United Bank</u>, two mortgage underwriters sued their former bank employer in state court for wrongful termination and breach of the covenant of good faith and fair dealing. 747 F.3d 141, 142 (2d Cir. 2014) (per curiam). Under Connecticut law, a wrongful termination claim requires the claimant to show that he or she was fired for "a reason whose impropriety is derived from some important violation of public policy." <u>Id.</u> at 143 n.1 (quoting <u>Sheets v. Teddy's</u> <u>Frosted Foods, Inc.</u>, 179 Conn. 471, 475 (1980)). In their complaint, the underwriters referred to the Fair Labor Standards

Act (FLSA) as reflecting the important public policy that employees should not work more than 40 hours a week without being paid overtime. Id. at 143-44. In support of the cause of action for breach of the covenant of good faith and fair dealing, the underwriters also pleaded that the FLSA "provide[d] a basis for their reasonable expectations of defendant's contractual obligations." Id. at 144. The bank removed the action to federal court, arguing that the references to FLSA in the complaint warranted the exercise of federal jurisdiction. Id. at 143. The Second Circuit found no federal question jurisdiction, because the federal question was insubstantial. The case did not require interpretation of the FLSA, and the federal system's interest in the case was minimal, because employees continued to have "direct access to a federal forum to assert their rights under the FLSA." Id. at 145. Notably, the Second Circuit emphasized that "[n]either the federal government nor the federal system as a whole has a pressing interest in ensuring that a federal forum is available to defendants in state tort suits that include passing references to a federal statute cited only as an articulation of public policy." Fracasse, 747 F.3d at 145. Such suits do not present a substantial question of federal law, because the employees whom FLSA was designed to protect have direct access to federal forums to assert their rights under the statute. Id.

This case is akin to <u>Fracasse</u>. The Complaint refers to federal standards as part of a passing articulation of what reasonable safety measures entail. This Court is not required to interpret OSHA, the NLRA, or the interaction between the CDC guidance and the APA in order to resolve the state labor law claims. Rather, the Court is asked to determine whether it is reasonable to require businesses to implement certain cleaning procedures and ventilation standards, establish contact-tracing programs, enforce social distancing, and allot additional time for handwashing in order to protect the health and safety of their employees. Further, the alleged victims in this case have recourse to federal courts, as well as agencies like the NLRB, to vindicate their rights if they so choose. Finally, whether CDC guidance suggests that Amazon's workplace safety measures were unreasonable under New York Labor Law § 200 is "fact-bound and situation specific." These four characteristics indicate that any federal issues raised in the Complaint are not substantial.

3. <u>The preemption issues are not capable of resolution in federal court without disrupting the federal-state balance.</u>

As discussed above with respect to complete preemption, Congress has already approved a balance where state labor and workplace safety laws coexist with federal standards. Congress has not indicated that state courts are inappropriate forums to resolve such issues by completely preempting them. Since courts should not

"lightly read [a] statute to alter the usual constitutional balance, as it would by sending actions with all state-law claims to federal court just because a complaint references a federal duty," this Court finds that there is no federal jurisdiction. <u>See</u> <u>Merrill Lynch, Pierce, Fenner & Palmer, Inc.</u>, 136 S. Ct. at 1574.

III. <u>The Mirror Image rule</u>

Finally, there is no federal question jurisdiction over the state law claims as declaratory relief. The declaratory judgment statute "does not expand the jurisdiction of the federal courts." <u>Skelly Oil Co. v. Phillips Petroleum Co.</u>, 339 U.S. 667, 671 (1950). Instead, a federal court has original jurisdiction over an action seeking declaratory relief where the declaratory judgment defendant's "threatened action" or the suit actually filed by the declaratory judgment defendant present a federal question. <u>W. 14th</u> <u>St. Com. Corp. v. 5 West 14th Owners Corp.</u>, 815 F.2d 188, 194 (2d Cir. 1987). Courts evaluate whether subject matter jurisdiction exists over suits for declaratory relief by rearranging the parties into "the hypothetical 'mirror image' coercive suit." <u>Garanti</u> <u>Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.</u>, 697 F.3d 59, 66 (2d Cir. 2012).

Amazon filed a declaratory judgment action against the New York Attorney General in the Eastern District of New York on February 12, 2021, seeking to enjoin state regulation on COVID-19 workplace safety issues on preemption grounds. Amazon argues that

the instant lawsuit, which commenced five days after the E.D.N.Y. action and seeks an order that Amazon has violated New York labor laws, is "an attempt by the State to have Amazon's affirmative federal claims decided through declaratory relief in state court, which establishes federal question jurisdiction." See Am. Notice of Removal, ECF No. 13, at 19-21. Put another way, Amazon styles the instant case as an action seeking a declaratory judgment that Amazon's declaratory judgment action cannot succeed. Amazon then urges the Court to rearrange this suit into its mirror image, such that Amazon's preemption defense becomes the affirmative basis for suit.

This hall of mirrors does not lead to Amazon's desired result. First, the Complaint actually filed by New York in state court does not devote a single sentence to preemption. The Complaint instead seeks a declaration that Amazon violated New York Labor Law §§ 200, 215, and 740. The Complaint does not seek a judgment on the preemptive effect of any federal law -- and if Amazon did not raise the issue, no such judgment would issue. Thus, the hypothetical coercive suit that mirrors this one would be a suit in which Amazon seeks a declaration that it did not violate Labor Law §§ 200, 215, and 740.

Second, even if the Complaint did specifically seek a declaration that state law was not preempted, such that the Eastern District of New York declaratory judgment action would be the

Complaint's mirror image, this would not suffice. When "the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the district court." Pub. Serv. Commn. of Utah v. Wycoff Co., Inc., 344 U.S. 237, 248 (1952); see also Fleet Bank, N.A. v. Burke, 160 F.3d 883, 886 (2d Cir. 1998). Thus, even in the mirror image Amazon asks the Court to conjure, there is no federal question jurisdiction, because the threatened action is governed by state law.

Finally, Amazon's argument proves too much. By Amazon's logic, a defendant with a federal defense can always maneuver its way into federal court, despite the Supreme Court's repeated insistence that a federal issue must appear on the face of the complaint. The clever defendant need only (1) construe the complaint as seeking a declaration that the defendant is liable under a state law and (2) argue that the complaint was filed in anticipation of a suit by defendant seeking a declaratory judgment that a federal defense precludes liability. This is but an end-run around the well-established contours of arise-under jurisdiction. The Supreme Court has been plain that "a federal court does not have original jurisdiction over a case in which the complaint presents a state-law cause of action, but also asserts

. . . that a federal defense the defendant may raise is not sufficient to defeat the claim." <u>Franchise Tax Bd.</u>, 463 U.S. at 10. Amazon does not make a persuasive case for overturning that longstanding rule.

Accordingly, the Court has determined that there is no jurisdiction over the Attorney General's declaratory relief claims.

CONCLUSION

For the foregoing reasons, the Court by order dated April 9, 2021 (ECF No. 35) granted the Attorney General's motion to remand and denied Amazon's motion to transfer as moot. The Clerk of Court is directed to enter final judgment and close the case.

SO ORDERED.

Dated:     New York, NY

　　　　   July 26, 2021                    JED S. RAKOFF, U.S.D.J.